UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JOSEPH QUEEN,<br><br>    Plaintiff,<br><br>v.<br><br>HELAL FARHAT, in his individual and official capacities, and STATE OF MICHIGAN,<br><br>    Defendants. | Case No. 25-10444<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [8, 13]**

On February 14, 2025, Joseph Queen filed this *pro se* civil rights case against Judge Helal Farhat and the State of Michigan, claiming that Judge Farhat violated his due process rights, among others, during his adjudication of Queen's child custody dispute in Wayne County Circuit Court. (ECF No. 1.) Shortly after, Judge Farhat filed a motion to dismiss, asserting absolute judicial immunity and the *Rooker-Feldman* doctrine. (ECF No. 8.) Later, the State of Michigan filed its own motion to dismiss raising sovereign immunity. (ECF No. 13.) The motions are adequately briefed (*see* ECF Nos. 9, 16) and do not require oral argument. *See* E.D. Mich. LR 7.1(f). For the reasons below, the motions to dismiss are GRANTED.

**I.**

The Court begins with the familiar standard. In deciding a motion to dismiss, the Court "construes the complaint in the light most favorable" to Queen and

determines whether his "complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but a complaint must "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). What is plausible is "a context-specific task" requiring this Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

A *pro se* litigant's complaint must be construed "liberally," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), i.e., read "indulgently," *Ruiz v. Hofbauer*, 325 F. App'x 427, 429–30 (6th Cir. 2009) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). But the Court's leniency is "not boundless." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). The Court must assume a plaintiff's factual allegations are true, but it is not required to accept as true allegations that are "clearly irrational or wholly incredible." *Ruiz*, 325 F. App'x at 430 (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Nor may the Court "conjure up unpleaded facts to support conclusory allegations." *Williams v. Hall*, No. 21-5540, 2022 WL 2966395, at *2 (6th Cir. July 27, 2022) (quoting *Perry v. UPS*, 90 F. App'x 860, 861 (6th Cir. 2004)). Basic pleading requirements "apply to self-represented and counseled plaintiffs alike." *Id.*; *see Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004).

## II.

Now the facts. Queen's complaint is rather ambiguous. But as far as the Court can discern, Queen was involved in a legal proceeding during which Judge Farhat issued orders regarding child support. (ECF No. 1, PageID.2.) Queen claims that Judge Farhat "weaponized" these "exorbitant" child support orders and threatened him with "arrest [and] excessive fines" to "deter [him] from pursuing [his] legal claims" and "coerc[e]" him into a consent judgment. (*Id.* at PageID.2–3.) He also claims that Judge Farhat "refused to allow [him] to present evidence when representing [himself] pro se," "delayed, deterred, and refused to allow [him] to proceed to trial," and "utilized his position to enforce unlawful seizure of [his] bank account." (*Id.*) He says Judge Farhat's orders were "fraudulent." (*Id.* at PageID.4.)[1] And he alleges "the Judicial Tenure Commission of Michigan is actively investigating [Judge Farhat] for judicial misconduct." (*Id.* at PageID.3.)

Judge Farhat's motion to dismiss provides some more context. The Court will consider the information as it comes from a public record. *See, e.g., Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). Judge Farhat explains that he presided over a custody case in 2023–2024 where Queen was named as the defendant. (ECF No. 8, PageID.20); *see also Scott v. Queen*, No. 23-106682-DC (Mich. 3d Cir. Ct. filed June

---

[1] Queen's response brief elaborates on what he means by "fraudulent." He says that Judge Farhat "signed and filed multiple child support orders that explicitly state they are not effective until signed by both parties" without either party's signature and "unilaterally executed and retroactively backdated multiple child support orders to 2023, falsely implying [Queen's] agreement . . . without notifying [him]." (ECF No. 9, PageID.78.)

3

23, 2023). Michaela Scott, the mother of Queen's infant child, sued Queen to determine custody, parenting time, and child support arrangements. (ECF No. 8, PageID.20.)[2] Trial was scheduled for February 29, 2024, but was continued to March 21, 2024, then to April 17, 2024, and then again to July 1, 2024, while the parties engaged in settlement discussions. (*Id.*) The parties were ultimately able to reach a settlement and memorialized the terms on the record. (*Id.*)[3] Judge Farhat says the parties indicated on the record that they understood the settlement was full, final, and binding, but Queen refused to sign a consent judgment and later filed a brief with the court denying that he had agreed to settle and asking that the matter proceed to trial. (*Id.* at PageID.20–21.) Nevertheless, on October 11, 2024, Judge Farhat entered a consent judgment for custody, parenting time, and child support that Judge Farhat says "memorializ[ed] the parties' settlement agreement." (*Id.* at PageID.21.)

---

[2] Judge Farhat also notes that both parties "were represented by counsel throughout *most* of the proceedings." (ECF No. 8, PageID.20 (emphasis added).) So there may have been periods of time where one or both parties were not represented by counsel. This is consistent with Queen's assertions about proceeding *pro se* for at least some of the custody proceedings.

[3] Judge Farhat notes that "[a]t one point during the Court's *voir dire* of the parties, Mr. Queen suggested his agreement to settle was motivated by concern that he would otherwise go to jail for failure to pay child support. Judge Farhat took the time to ensure the parties understood the terms of the settlement, further explaining that child custody, parenting time, and child support are subject to review, and scheduling a review hearing for October, 2024, to address any requests for modification of terms." (ECF No. 8, PageID.20.) Though this may very well be true, since no transcript was provided and it contradicts Queen's version of the facts the Court will disregard these allegations in determining the motion to dismiss.

4

On February 25, 2025, Queen filed a motion to disqualify Judge Farhat from the case. (*Id.*) But Queen has not appealed to the appropriate state court any of the orders in the underlying custody case. (*Id.*) Instead, he filed this suit in federal court.

Queen claims Judge Farhat's actions violate the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and constitute "abuse of process" and intentional infliction of emotional distress. (ECF No. 1, PageID.3–4.) He seeks monetary, declaratory, and injunctive relief, as well as costs and attorney's fees (despite proceeding *pro se*). (*Id.* at PageID.5.) He sues Judge Farhat in his individual and official capacity and also sues the State of Michigan. (*Id.* at PageID.1.)

Judge Farhat counters that he is entitled to judicial immunity, and that Queen's attempt to collaterally attack his orders is barred by the *Rooker-Feldman* doctrine—a jurisdictional bar that prevents federal district courts from hearing cases that seek to reverse or modify a state court judgment. (ECF No. 8, PageID.21); *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). The State of Michigan also moves to dismiss, arguing it is entitled to sovereign immunity under the Eleventh Amendment and that it cannot be sued under 42 U.S.C. § 1983. (ECF No. 13, PageID.128.) The Court will address each of these issues in proper order.

### III.

#### A. Jurisdiction

The Court begins, as it must, with jurisdiction. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) ("Subject matter jurisdiction is always a threshold determination."). And the *Rooker-Feldman* doctrine implicates the Court's

5

subject matter jurisdiction. This doctrine prohibits federal district courts from performing appellate review of state court judgments. *Exxon Mobil*, 544 U.S. at 284 (explaining that "Congress ha[s] empowered only [the Supreme] Court," not district courts, "to exercise appellate authority 'to reverse or modify' a state-court judgment" (quoting *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 416 (1923)); *see also In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009). In other words, this Court does not have direct oversight power over Michigan courts. *Adkins v. Adkins*, No. 15-13823, 2015 WL 6736187, at *2 (E.D. Mich. Nov. 4, 2015) (citing *In re Cook*, 551 F.3d at 548).

The *Rooker-Feldman* doctrine, however, "applies only to the 'narrow' set of 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020) (quoting *Exxon Mobil*, 544 U.S. at 284). "If the source of the plaintiff's injury is the state-court judgment itself, then *Rooker-Feldman* applies." *Larry E. Parrish. P.C. v. Bennett*, 989 F.3d 452, 456 (6th Cir. 2021). And to identify the source of the plaintiff's injury, "a court must look to the requested relief." *Id.*

Thus, to the extent Queen is seeking an order "vacat[ing] all prior orders pertaining to [his] custody case" (ECF No. 1, PageID.4), *Rooker-Feldman* bars this Court from adjudicating that claim. This is a matter appropriately left for appeal in the state courts, and ultimately, the Supreme Court of the United States. *See* 28 U.S.C. § 1257.

On the other hand, to the extent Queen is alleging constitutional violations related to the conduct of the state court proceedings, rather than challenging the judgment itself, the Court may adjudicate his claims. *See, e.g., Muhammad v. Paruk*, 553 F. Supp. 2d 893, 897 (E.D. Mich. 2008).

The Court, though, must also consider another exception to federal jurisdiction. The domestic-relations doctrine "preclude[s] [federal courts] from exercising jurisdiction over cases whose substance is generally domestic relations." *Chambers v. Michigan*, 473 F. App'x 477, 478 (6th Cir. 2012); *see also In re Burrus*, 136 U.S. 586, 593–94 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States, and not the laws of the United States."). "[T]he domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). The exception applies when "a plaintiff positively sues in federal court for divorce, alimony, or child custody, or seeks to modify or interpret an existing" order of such. *Alexander v. Rosen*, 804 F.3d 1203, 1205 (6th Cir. 2015) (quoting *Chevalier v. Est. of Barnhart*, 803 F.3d 789, 795 (6th Cir. 2015)).

But like the *Rooker-Feldman* exception, "if the plaintiff asserts federal claims seeking to vindicate federal statutory or constitutional rights . . . then the [domestic-relations] exception does not apply—even if the relief sought includes nullification of a domestic-relations decree." *Edelstein v. Flottman*, No. 24-3156, 2025 U.S. App. LEXIS 570, at *5–6 (6th Cir. Jan. 10, 2025) (citing *Alexander*, 804 F.3d at 1205–06). In fact the Sixth Circuit has never squarely answered whether this exception applies

7

in federal question cases at all. *Id.* at *4 ("As an initial matter, though, we must point out that this is a federal-question case, and 'we have not addressed' whether 'the [domestic relations] exception applies only to diversity (rather than federal question) cases.'" (q*uoting Alexander*, 804 F.3d at 1205)).

So while the Court might lack jurisdiction over Queen's custody arrangements or child support obligations on their own, it does have jurisdiction to adjudicate his constitutional claims.

### B. Judicial Immunity

With the threshold issue of jurisdiction out of the way, the Court turns to Judge Farhat's judicial immunity defense. "It is a well-entrenched principle in our system of jurisprudence that judges are generally absolutely immune from civil suits for money damages." *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997); *see also DePiero v. City of Macedonia*, 180 F.3d 770, 783 (6th Cir. 1999). "Immunity from a § 1983 suit for money damages is no exception." *Barnes*, 105 F.3d at 1115 (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Judges are entitled to immunity for "acts performed in their judicial capacities, except for acts done in the clear absence of jurisdiction." *Shophar v. Gorski*, No. 17-13322, 2018 U.S. Dist. LEXIS 159113, at *14 (E.D. Mich. June 5, 2018); *see also DePiero*, 180 F.3d at 783. In other words, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*,

8

435 U.S. 349, 356–57 (1978). "An action is within a judicial capacity if it is normally performed by a judge." *Shophar*, 2018 U.S. Dist. LEXIS 159113, at *14

Here, all of the actions that Queen complains of were taken in connection with Judge Farhat's adjudication of Queen's case. *See id.* ("[E]ntering and enforcing custody orders are judicial functions."). Judge Farhat is the presiding judge of the family domestic division of the Wayne County Circuit Court and clearly had jurisdiction over child custody and domestic relations proceedings. *See* Mich. Compiled Laws § 600.1021; *see also Welcome to Third Judicial Circuit of Michigan*, Third Jud. Cir. of Mich., https://perma.cc/Q4QT-47PR. And Queen's legal conclusions that Judge Farhat "acted beyond his jurisdiction by coercing [him] into a consent judgment under threat of incarceration" (ECF No. 9, PageID.75), does not deprive a judge of immunity. *See Stump*, 435 U.S. at 356–57 ("A judge will not be deprived of immunity because the action he took . . . was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"). In sum, Judge Farhat is entitled to judicial immunity as to Queen's damages claims.[4]

---

[4] Queen also claims that the lack of his signature "on the so-called 'consent judgment' . . . is clear proof that [Judge] Farhat negotiated and imposed the terms of this judgment without [Queen's] consent or input, a direct violation of [his] Fourteenth Amendment right to due process." (ECF No. 9, PageID.76.) He goes on to say, "The absence of [his] signature is an undisputed fact that underscores the unlawful nature of Defendant's actions, invalidating any judicial immunity defense." (*Id.*) Entering a consent judgment is a judicial act. Even if done improperly, that does not strip the judge's immunity. Again, "judicial immunity applies to acts performed maliciously and corruptly as well as acts performed in bad faith or with malice." *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004). Moreover, the absence of a signature on a consent judgment does not automatically invalidate the judgment if it was otherwise agreed to. In fact, "[a] party cannot, after agreeing in open court, refuse to sign a proposed judgment which accurately incorporates the agreement unless

Additionally, 42 U.S.C. § 1983, the statute through which Queen brings his constitutional claims, "generally does not permit plaintiffs to seek injunctions against judges acting in their judicial capacity." *Orta v. Repp*, No. 23-3034, 2023 U.S. App. LEXIS 23388, at *9 (6th Cir. Sept. 1, 2023); *see Williams v. Parikh*, No. 24-3059, 2024 U.S. App. LEXIS 22602, at *4 (6th Cir. Sept. 4, 2024) (citing *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021)) (explaining that the *Ex parte Young* doctrine, i.e., the sovereign immunity exception that permits suits against state officials for prospective injunctive relief, "does not normally permit federal courts to issue injunctions against state-court judges"). And in any event, "injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Queen does not allege that declaratory relief is unavailable here. *See Davis v. Campbell,* No. 13-0693, 2014 WL 234722, at *9 (N.D.N.Y. Jan. 22, 2014) ("[D]eclaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order."); *see also Bridges v. Blackmon*, No. 23-3911, 2024 U.S. App. LEXIS 11334, at *3 (6th Cir. May 8, 2024) ("And although judicial immunity does not bar injunctive relief, such relief is not available against the judges because Bridges did not allege that 'a declaratory decree was violated or declaratory relief was unavailable.'" (quoting 42

---

there was a mistake, fraud, or unconscionable advantage which would justify setting aside the settlement agreement." *Mich. Bell Telephone Co v. Sfat*, 442 N.W.2d 720, 724 (Mich. Ct. App. 1989). Here, as described, there is some indication that Queen did agree to the terms in open court. (ECF No. 8, PageID.20.)

10

U.S.C. § 1983)); *cf. Gilbert v. Ferry*, 401 F.3d 411, 414 n.1 (6th Cir. 2005). In fact, Queen brings a claim for declaratory relief.

"Section 1983 . . . implicitly recognizes that declaratory relief is available against judicial officers" in limited circumstances and "only to the extent [that a plaintiff] seeks prospective relief." *Ward v. City of Norwalk*, 640 F. App'x. 462, 467 (6th Cir. 2016) (emphasis added). As an initial matter, it is not clear that Queen is seeking prospective declaratory relief. He seeks "a declaration that the Defendant' actions violated [his] constitutional rights," and prospective injunctive relief: "an injunction prohibiting [defendants] from further violating Plaintiff's rights [and] requiring [Judge Farhat] to recuse himself from Plaintiff's ongoing custody trial." (ECF No. 1, PageID.4.) But even to the extent that declaratory relief could be available here, that availability "does not necessarily mean that such relief will be appropriate in every case." *Ward*, 640 F. App'x at 468. The Supreme Court has emphasized that "a court '*may* declare the rights and other legal relations of any interested party,' not that it *must* do so." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting 28 U.S.C. § 2201). "This text has long been understood to confer on federal courts 'unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995)).

The Sixth Circuit has identified five factors to consider when exercising that discretion:

(1) whether the judgment would settle the controversy;

11

(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy that is better or more effective.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (citing *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984)).

Here, these factors counsel against granting a declaratory judgment—especially the last two factors. As previously discussed, issues of domestic relations are primarily reserved for state courts to adjudicate. Examining the custody orders that Judge Farhat entered and the way that he manages his courtroom would "undoubtably increase friction in the relationship between our state and federal courts." *Muhammad*, 553 F. Supp. 2d at 900. Additionally, there is an alternative remedy that is much better suited for such review: Queen could appeal Judge Farhat's orders to the Michigan Court of Appeals, and if necessary, to the Michigan Supreme Court. *Accord Derouseau v. Westchester Cnty. Fam. Ct.*, No. 24-5976, 2024 U.S. Dist. LEXIS 197618, at *7 (S.D.N.Y. Oct. 28, 2024) ("[D]eclaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order." (alteration in original)).

Accordingly, Judge Farhat is immune from a suit for damages and injunctive relief, and the Court finds that declaratory relief is not appropriate in this case.

## C. Sovereign Immunity

Next the Court turns to the State of Michigan's sovereign immunity argument.

The Eleventh Amendment bars suits against states, *Hans v. Louisiana*, 134 U.S. 1, 15 (1890), unless either a state has expressly consented to being sued, thus waiving its sovereign immunity, *see, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984), or Congress has properly abrogated state sovereign immunity, *see, e.g.*, *Fitzpatrick v. Bitker*, 427 U.S. 445, 451–52 (1976). Here, "[t]he state of Michigan . . . has not consented to be sued in civil rights actions in the federal courts." *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004). And Congress did not "overturn the constitutionally guaranteed immunity of the several States" with the passage of § 1983. *Quern v. Jordan*, 440 U.S. 332, 342 (1979); *see also Will*, 491 U.S. at 6. So sovereign immunity applies here.

In his response, Queen concedes that his claims for monetary damages are barred by sovereign immunity. (ECF No. 16, PageID.148.) But he incorrectly argues that his claims for injunctive and declaratory relief are not. (*Id.*) Sovereign immunity applies "regardless of the nature of the relief sought," *Pennhurst*, 465 U.S. at 100–01, and "bars all suits, whether for injunctive, declaratory or monetary relief, against the state," *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) (citations omitted)—including this one.

Additionally, even setting aside the issues of Eleventh Amendment sovereign immunity, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71. Moreover, in *Monell v. Department of*

13

*Social Services*, the Supreme Court specifically limited its holding to "local government units which are not considered part of the State for Eleventh Amendment purposes." 436 U.S. 658, 690 n.54 (1978).

Accordingly, sovereign immunity bars Queen's claims against the State of Michigan.

### IV.

For the foregoing reasons, the Court GRANTS both motions to dismiss (ECF Nos. 8, 13) and DISMISSES the case. A separate judgment will follow.

SO ORDERED.

Dated: April 22, 2025

s/Laurie M. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
